# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

MICHAEL D. CHANEY,

      Plaintiff,

v.                                                                         No. CIV 97-1382 M/JHG

KENNETH S. APFEL,
COMMISSIONER OF SOCIAL SECURITY,

      Defendant.

## MAGISTRATE JUDGE'S PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

    1.    This matter comes before the Court upon Plaintiff's (Chaney's) Motion to Reverse or Remand Administrative Decision, filed June 25, 1998. The Commissioner denied Chaney's application for disability insurance benefits and supplemental security income. Chaney, now 56 years old, alleges a disability which commenced August 1, 1991, due to left foot, ankle, and knee problems. He has a GED with past relevant work experience as an electrician.

    2.    The Commissioner denied Chaney's applications both initially and on reconsideration. After conducting an administrative hearing, the Commissioner's Administrative Law Judge (ALJ) found Chaney had the residual functional capacity for light work and was a person closely approaching advanced age. Applying the grids, the ALJ concluded Chaney was not disabled. The Appeals Council denied Chaney's request for review of the ALJ's decision. Hence, the decision of the ALJ became the final decision of the Commissioner for judicial review purposes. Chaney seeks review of the Commissioner's final decision pursuant to 42 U.S.C. §405(g).

    3.    The standard of review in this Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether he applied correct legal standards.

*Hamilton v. Secretary of Health and Human Services,* 961 F.2d 1495, 1497-98 (10th Cir. 1992). Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994). This Court may not reweigh the evidence or substitute its judgment for that of the ALJ *Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991).

4. Chaney contends the ALJ erred in relying on an incomplete residual functional capacity assessment that was not based on any objective medical evidence, erred in applying the grids, and erred in not obtained the testimony of a vocational expert.

5. In order to qualify for disability benefits, a claimant must establish a severe physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity. *Thompson v. Sullivan*, 987 F.2d 1482, 1486 (10th Cir. 1993)(citing 42 U.S.C. §423(d)(1)(A)). Social Security Administration regulations require the Commissioner to evaluate five factors in a specific sequence in analyzing disability applications. 20 C.F.R. § 404.1520 (a-f). The sequential evaluation process ends if at any step the Commissioner finds the claimant is not disabled. *Thompson v. Sullivan*, 987 F.2d at 1487.

6. At the first four levels of the sequential evaluation process, the claimant must show he is not engaged in substantial gainful employment, he has an impairment or combination of impairments severe enough to limit his ability to do basic work activities, and his impairment meets or equals one of the presumptively disabling impairments listed in the regulations under 20 C.F.R. Part 404, Subpt. P, App. 1, or he is unable to perform work he had done in the past. 20 C.F.R. §§ 404.1520 and 416.920. At the fifth step of the evaluation, the burden of proof shifts to the Commissioner to show the claimant is able to perform other substantial gainful activity considering

2

his residual functional capacity, age, education, and prior work experience. *Id.*

7. The record reveals that on August 1, 1990, while working as an electrician, Chaney slipped from the bottom rung of a ladder and fell, injuring his left foot, ankle, and coccyx. Tr. 107. The next day, he went to the emergency room where he was diagnosed with left ankle sprain. *Id.* X-rays revealed a screw in the talus bone from an old surgery, with no evidence of fracture or dislocation. *Id.* Although Dr. Berry did not note any work restrictions in his first report of occupational injury, Chaney did not return to work after the accident.

8. On August 28, 1991, Dr. Seibel noted tenderness in the ankle and restricted Chaney from climbing and heavy lifting. Tr. 108. Dr. Seibel ordered physical therapy which was started at the rate of about twice a week, decreasing to once per week through the end of November, 1991. *Id.* On December 6, 1991, Dr. Seibel noted Chaney lacked some dorsi-flexion, had some tenderness around the area of the Achilles tendon, and had "strong tendencies to malinger." Tr. 108.

9. Dr. Seibel referred Chaney to Dr. Hawthorne for a second opinion. Tr. 167. On September 25, 1991, Dr. Hawthorne found tenderness over the distal Achilles tendon, a well-healed medial scar, limited subtalar motion and a tight heel cord with dorsi-flexion of the ankle only to neutral. *Id.* Dr. Hawthorne diagnosed Achilles tendinitis, posterior tibial tendinitis, and status post ankle sprain. *Id.* She recommended physical therapy, arch support, continued anti-inflammatory medication and restricted him from working for two weeks. *Id.*

10. On April 14, 1992, Dr. Cobden found Chaney walked with a limp on the left with no atrophy of either thigh or calf and normal knee motion. Tr. 109. He diagnosed degenerative arthritis and chronic sprain condition of the left ankle. *Id.* Dr. Cobden concluded Chaney required no further medical attention but was restricted from climbing ladders or getting into tight spaces. *Id.* Dr.

Cobden felt Chaney could work four to six hours per day in a standing position but should not work on ceilings or high places. *Id.*

11. On July 10, 1992, Chaney complained to Dr. Cummings of tightness in his left knee, pain in his coccyx and persistent pain, swelling and stiffness in his left ankle. Tr. 109. Chaney told Dr. Cummings in 1964 he underwent surgery on his left knee after a motor vehicle accident. *Id.* He also related he was in another motor vehicle accident in 1977, in which he fractured his left foot and underwent an open reduction. Tr. 110. Dr. Cummings diagnosed post-traumatic osteoarthritis of left hind foot, coccyx pain, left knee pain and peripheral edema. Tr. 114-15.

12. On June 28, 1994, Dr. Seibel wrote that Chaney's belief he was unable return to his work as an electrician was based entirely on subjective symptoms of pain. Tr. 87. Dr. Seibel agreed with Dr. Cobden that the only restriction which might affect Chaney's ability to return to his previous occupation was an inability to climb ladders or work in a tight space. Tr. 87. Dr. Seibel wrote the "objective findings of mild degenerative changes in the ankle are not, by themselves, sufficient basis for his retirement." *Id.*

13. On December 21, 1994, Dr. Trafton performed a consultative examination. Tr. 137-39. Chaney presented with an apparently abnormal gait and did not appear to be in any distress. Tr. 138. Dr. Trafton observed a reduction in dorsi flexion of the left ankle to 20 degrees. *Id.* Medial and lateral deviation of the left ankle were minimal. Tr. 139. The circumference of the left ankle was one inch greater than that of the right. *Id.* There was no objective evidence of left knee swelling, but Chaney reported discomfort with varus stress and 20 degrees of laxity was observed in the lateral compartment. *Id.* Dr. Trafton diagnosed deformity, restriction of range of motion and gait impairment related to the left ankle and foot as well as laxity of the lateral compartment of the left knee

4

contributing to gait impairment. *Id.* Dr. Trafton also filled out a Medical Source Statement of Ability to Do Work-Related Activities (physical) form. Tr. 143-44.

14. In support of his motion, Chaney contends the ALJ erred as a matter of law in relying on an incomplete residual functional capacity assessment which was not based on any objective medical evidence. Chaney appears to argue the ALJ relied exclusively on the form filled out by Dr. Trafton. This contention is wholly without foundation. In his decision, the ALJ specifically considered and articulately discussed the medical evidence of record. Tr. 15-16. The ALJ fully analyzed the reports of the physicians as well as Chaney's treatment records at various health care facilities. Tr. 15-16. In light of all this evidence, the ALJ properly concluded while plaintiff has severe difficulties with his left lower extremity and may not have the ability to perform his past work as an electrician, he retained the capacity to perform at least a full range of light work. Tr. 16.

15. This finding is entirely consistent with the medical records. Dr. Cobden felt Chaney could work four to six hours per day in a standing position but should not work on ceilings or high places. Dr. Seibel wrote the "objective findings of mild degenerative changes in the ankle are not, by themselves, sufficient basis for his retirement." Dr. Hawthorne recommended restriction from working for only two weeks in September, 1991, the month following the accident. None of the health care providers stated Chaney was wholly precluded from working. Therefore, contrary to Chaney's argument, the record is replete with evidence which supports the ALJ's finding. It is clear the ALJ did not rely exclusively on Dr. Trafton's form in assessing Chaney's residual functional capacity. The ALJ's finding that Chaney retained the residual functional capacity to perform the full range of light work is supported by substantial evidence and the ALJ applied correct legal standards.

16. Chaney also charges the ALJ erred in applying the grids mechanically in light of his

5

complaints of pain. In evaluating a claim of disabling pain, the appropriate analysis considers (1) whether there is objective medical evidence of a pain producing impairment, (2) whether there is a loose nexus between this objective evidence and the pain and (3) whether, in light of all the evidence, both objective and subjective, the pain is in fact disabling. *Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994)(citing *Luna v. Bowen*, 834 F.2d 161, 163 (10th Cir. 1987)). In this case, the ALJ considered all the *Luna* factors in his analysis. Tr. 16-17. Specifically, the ALJ considered the objective medical evidence concerning the medical history and treatment with respect to Chaney's left leg. Tr. 15-16. The ALJ then compared the complaints with the alleged precipitating factors, his daily activities, as well as his admitted abilities. Tr. 16-17. A review of the record and the decision of the ALJ establishes the ALJ properly considered all the evidence regarding Chaney's pain complaints and substantial evidence of record supports his findings.

17. Moreover, the ALJ also found Chaney was not wholly credible. The ALJ noted Chaney's physicians stated he tended to exaggerate his symptoms and his testimony was inconsistent with the objective medical findings. Tr. 16-17. Credibility determinations are peculiarly the province of the finder of fact. *Kepler v. Chater*, 68 F.3d 387 (10th Cir. 1995); *Hamilton*, 961 F.2d at 1499-1500. Subjective complaints must be evaluated in light of the claimant's credibility as well as the medical evidence. *Musgrave v. Sullivan*, 966 F.2d 1371, 1376 (10th Cir. 1992). Several physicians stated Chaney had a strong tendency to embellish his symptoms. The ALJ properly evaluated Chaney's credibility and his complaints of disabling pain. Substantial evidence of record supports his credibility finding as well as his finding that Chaney retained the residual functional capacity to perform the full range of light work.

18. Chaney argues the ALJ committed reversible error by failing to obtain the testimony

6

of a vocational expert at step five. In this case the ALJ relied on the grids at step five. The grids reflect the existence of jobs in the national economy at various residual functional levels by incorporating administrative notice of occupational publications and studies. 20 C.F.R. §404.1566(d). The grids aid the Commissioner in determining what specific jobs exist in the national economy for the claimant. To apply the grids, the ALJ must make findings of fact as to age, education, work experience, and residual functional capacity. 20 C.F.R. §§404.1545, 404.1563-.1565. These findings of fact are plugged into the grids to produce a factual conclusion of disability. 20 C.F.R. §404.1569.

19. While it is true the grids may not be applied conclusively unless the plaintiff's characteristics precisely match their criteria, the mere presence of a non-exertional impairment does not necessarily preclude reliance on the grids. *Ray v. Bowen*, 865 F.2d 222, 225-26 (10th Cir. 1989). Use of the grids is foreclosed only to the extent that non-exertional impairments further limit the range of jobs available to the claimant. *Gossett v. Bowen*, 862 F.2d 802, 807-08 (10th Cir. 1988).

20. The grids may be used when the ALJ finds, based on substantial evidence, the non-exertional impairment does not affect residual functional capacity. *Glass v. Shalala*, 43 F.3d 1392, 1396 (10th Cir. 1994). In this case, the ALJ applied the grids only after he determined Chaney's non-exertional limitations did not restrict his ability to perform the full range of light work. The Court has already determined substantial evidence of record supports the ALJ's finding that non-exertional factors did not limit Chaney's residual functional capacity for the full range of light work. Consequently, it was not necessary to obtain the testimony of a vocational expert and the ALJ properly applied the grids.

21. Chaney's contentions concerning the transferability of his skills are not relevant to the ALJ's application of the grids. Under the regulations, a person who is fifty to fifty-four years old is

a person closely approaching advance age. 20 C.F.R. § 404.1563 (c). At the time of the ALJ's decision, Chaney was 54 years old. Tr. 18. Therefore, he was a person closely approaching advanced age. Under the regulations, a person 55 years old or older is a person of advanced age. 20 C.F.R. § 404.1563(d). If a claimant is a person of advanced age, then the ALJ has a higher burden at step five and must show the claimant has transferable skills. *Nielson v. Sullivan*, 992 F.2d 1118, 1120 (10th Cir. 1993). In this case, Chaney was not a person of advanced age at the time of the ALJ's decision. Consequently, the ALJ was not required to show Chaney's skill's were transferrable. For this reason, the ALJ was not required to obtain the testimony of a vocational expert.

### RECOMMENDED DISPOSITION

The ALJ applied correct legal standards and substantial evidence supports the decision. The motion to reverse or remand administrative agency decision should be denied and this case should be dismissed.

JOE H. GALVAN
UNITED STATES MAGISTRATE JUDGE

### NOTICE

Within ten days after a party is served with a copy of these proposed findings and recommended disposition that party may, pursuant to **28 U.S.C. § 636 (b)(1)**, file written objections to such proposed findings and recommended disposition. A party must file any objections within the ten day period allowed if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.